# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SIDNEY LEE CALDWELL, JR.,

        Defendant-Appellant.

UNPUBLISHED
February 10, 2015

No. 318915
Berrien Circuit Court
LC No. 2013-001200-FC

Before: O'CONNELL, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant, Sidney Lee Caldwell, Jr., appeals as of right his convictions of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (penetration involving a person under 13), following a jury trial. The trial court sentenced Caldwell to serve 25 to 60 years' imprisonment. We affirm.

## I. FACTS

The victim in this case testified that he was 13 years old at the time of trial and was in special education. According to the victim, he went to a barbeque at the house of Caldwell's mother, Ruthann, when he was four, five, or eight years old. His sister, mother, step-father, Caldwell's mother Ruthann, and Ruthann's boyfriend also attended the barbeque. During the barbeque, Caldwell asked the victim to go into a bedroom with him and pull down his pants. Caldwell then performed fellatio on the victim, had the victim perform fellatio on him, and penetrated the victim anally.

The victim's sister testified that the victim was nine years old on the day of the barbeque. According to the victim's sister, she was on her way to use the bathroom when she heard a noise from Caldwell's bedroom. She looked into the bedroom and saw the victim performing fellatio on Caldwell. She went to get their mother. When she returned to the bedroom, Caldwell was penetrating the victim anally.

The victim's mother, Tonia Johnston, testified that there was no barbeque on the day of the sexual assault. According to Johnston, she was folding clothes in the basement when the victim's sister entered the room crying. She followed the victim's sister into the living room and saw Caldwell pushing the victim's head onto his penis.

-1-

The victim and the victim's sister testified that Johnston told them not to talk about what had happened. Johnston testified that Ruthann told her not to tell anyone about the incident, and Johnston instructed the children not to talk about it. The victim testified that Johnston said that she would not call the police and that he was "mad."

The victim's foster mother testified that the victim and his sister came to live with her in 2012. According to the foster mother, after the children had lived with her for about six months, they had an argument during which the victim's sister called the victim names and said that he "got touched." The children's foster mother immediately called Social Services. Brooke Rospierski, a forensic interview specialist at the Children's Assessment Center, testified that she interviewed the children on March 21, 2013.

Benton Harbor Public Safety Detective Wes Smigielski testified that he was present at the interview. According to Detective Smigielski, he interviewed Johnston and Caldwell. Johnston suffered from cognitive difficulties and was afraid to participate in the interview, but she eventually told him that an incident happened in Caldwell's bedroom. Caldwell told him that Johnston had mistakenly believed he was performing fellatio on the victim when he was actually reaching for the remote control to the television set.

The jury convicted Caldwell of three counts of CSC I. Caldwell now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Caldwell contends that the evidence was not sufficient to sustain his convictions because the witnesses' testimonies were inconsistent, impeached, and confusing. We disagree.

A defendant's claim that the evidence was insufficient invokes the defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We review the evidence in a light most favorable to the prosecutor to determine whether a trier of fact could find that the prosecutor proved the crime's elements beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

To prove the elements of MCL 750.520b(1)(a), the prosecutor must provide evidence that the defendant sexually penetrated another person when the other person was under 13 years of age. *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). The victim's testimony alone may sufficiently support a CSC conviction. *People v Phelps*, 288 Mich App 123, 132; 791 NW2d 732 (2010); MCL 750.520h. This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *Eisen*, 296 Mich App at 331. We must defer to the trier of fact's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the [trier of fact] could not believe it, or contradicted indisputable physical facts or defied physical realities . . . ." *People v Lemmon*, 456 Mich 625, 645-646, 647; 576 NW2d 129 (1998).

In this case, the witnesses' testimonies conflicted in some ways. For instance, Johnston testified that the sexual assault occurred in the living room, while the children testified that it occurred in the bedroom. And the victim's testimony was internally inconsistent at times.

However, we conclude that the testimony was not so thoroughly impeached that it had no probative value. We defer to the jury's determination of the witnesses' credibility.

Viewed in the light most favorable to the prosecutor, the testimony of the victim and other witnesses support Caldwell's convictions. The victim was under the age of 13 at the time of the incident. The victim, the victim's sister, and Johnston all testified that the victim performed fellatio on Caldwell. The victim and the victim's sister testified that Caldwell penetrated the victim anally. And the victim testified that Caldwell performed fellatio on him. We conclude that the evidence sufficiently supported Caldwell's convictions of three counts of CSC I.

### III. EXPERT TESTIMONY

Generally, this Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). However, to preserve an issue, the appellant must challenge it before the trial court. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). We review unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and the error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id*. This issue is unpreserved because Caldwell did not challenge Rospierski's testimony before the trial court.

MRE 702 provides that the trial court may admit expert testimony if it meets certain requirements:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In child sexual abuse cases, expert testimony regarding children's behavior is "sometimes necessary to explain behavioral signs that may confuse a jury so that it believes that the victim's behavior is inconsistent with that of an ordinary victim of child sexual abuse." *People v Peterson*, 450 Mich 349, 362; 537 NW2d 857 (1995). If the defendant uses the child's behavior to attack the child's credibility, an expert may testify about the common behaviors of children who are victims of sexual abuse in general, but an expert may not testify that a victim's specific behavior is consistent with that of an abused child. *Id*. at 373-374.

However, the expert's testimony may be inadmissible under MRE 403. *Id*. at 375. MRE 403 provides that even relevant evidence is inadmissible if its probative value is substantially outweighed by its prejudicial effect. The prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). It is particularly important that the appellant preserve challenges to

evidence under MRE 403 because the trial court is in the best position to assess the relative weight of the evidence's probative value and prejudicial effect. *Id*. A general fear of prejudice does not render evidence inadmissible, nor does the fact that evidence is damaging. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995).

First, Caldwell contends that the evidence was irrelevant and unfairly prejudicial. We disagree.

In this case, defense counsel contended in opening statements that the victim's delayed disclosure was problematic for the prosecutor. Caldwell used the victim's delayed disclosure, failure to call for help, and Caldwell's open door and window to attack the victim's credibility. Rospierski testified that child victims of sexual abuse do not always cry for help, that children often delay disclosing the abuse, and that offenders often engage in high-risk behavior. Rospierski's testimony was relevant because it assisted the trier of fact to determine whether the victim's behavior was inconsistent with other victims of child sexual abuse. And there is no indication that the evidence was only marginally probative or that the jury may have given it undue or preemptive weight. We conclude that the trial court did not plainly err by admitting Rospierski's testimony.

Second, Caldwell contends that Rospierski's testimony was unreliable. Again, we disagree.

MRE 702 requires the trial court to ensure that the testimony is reliable. *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007). "Expert testimony may be excluded when it is based on assumptions that do not comport with the established facts or when it is derived from unreliable and untrustworthy scientific data." *Id*. The mental health field is a discipline of specialized knowledge; behavioral scientists and clinicians specialize in the treatment and study of victims of child sexual abuse. *People v Beckley*, 434 Mich 691, 718; 456 NW2d 391 (1990). Such evidence is sufficiently reliable if it is "really only an opinion of the expert based on collective clinical observations of a class of victims[.]" See *Id*. at 721. This is particularly true when there is no suggestion at trial that the expert's observations were based on unreliable principles and methods. See *In re Noecker*, 472 Mich 1, 12; 691 NW2d 440 (1995).

In this case, Rospierski testified that she has a master's degree in social work. Rospierski worked as a forensic interview specialist at the Children's Assessment Center, worked for four years as a therapist for victims of sexual abuse, and worked three years as a Children's Protective Services specialist. During her career, Rospierski had over 400 hours of training in forensic interviewing, performed over 1,500 forensic interviews for the Children's Assessment Center, and performed over 3,000 interviews as a child protective services specialist. Rospierski testified about common and uncommon behaviors on the basis of her observations of children during thousands of interviews. Defense counsel did not contend at trial that Rospierski based her observations on unreliable principles and methods. We conclude that the trial court did not plainly err by admitting Rospierski's testimony. It was sufficiently reliable as an expert opinion based on her collective clinical observations as a children's forensic interviewer.

Third, Caldwell contends that the trial court improperly instructed the jury regarding the use of Rospierski's testimony. We conclude that Caldwell has waived out review of this issue.

-4-

A party's approval of the trial court's jury instructions on the record is an intentional abandonment of the party's known rights, and the party's waiver extinguishes any error. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). When the trial court asks the party whether it has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions. *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002).

In this case, the trial court instructed the jury about the proper use of Rospierski's testimony consistent with M Crim JI 20.29. Before issuing the instructions, the trial court indicated that it had gone through the proposed jury instructions and asked counsel whether the jury instructions were "satisfactory." Defense counsel responded, "Yes." After the trial court issued the jury instructions, it asked whether the parties had any objections to the instructions. Defense counsel responded, "None." We conclude that defense counsel's affirmative approval of the instructions waived any error.

## IV. PROSECUTORIAL MISCONDUCT

Caldwell contends that several of the prosecutor's statements constituted misconduct. A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). See *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). This Court reviews unpreserved claims of prosecutorial misconduct for plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

The prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial. *Dobek*, 274 Mich App at 63. We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments and the evidence presented in the case. *Id*. at 64.

First, Caldwell contends that the prosecutor committed misconduct by arguing several pieces of irrelevant evidence in her opening and closing statements. We conclude that the prosecutor's actions were good-faith attempts to admit relevant evidence.

When the defendant's argument is an evidentiary issue framed as a prosecutorial misconduct issue, this Court determines whether the prosecutor acted in good faith. *Dobek*, 274 Mich App at 70-71. "A prosecutor's good-faith effort to admit relevant evidence does not constitute misconduct." *Id*. at 70. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. MRE 401.

We have reviewed each of Caldwell's assertions of prosecutorial misconduct by the admission of irrelevant evidence and conclude that each piece of evidence made a fact of consequence more or less probable. There is no indication in the record that the prosecutor acted in bad faith in any attempt to admit evidence. Therefore, Caldwell has not shown plain error regarding the prosecutor's admission of evidence.

Second, Caldwell contends that the prosecutor improperly appealed to the jury's sympathy. We disagree.

A prosecutor may not invite jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civil duty. *Unger*, 278 Mich App at 237. And a prosecutor may not argue the effect of testimony that was not in evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). But a prosecutor may argue all the facts in evidence and reasonable inferences from the facts that relate to the prosecutor's theory of the case. *Unger*, 278 Mich App at 236.

In this case, the victim's testimony contained several inconsistencies. Several times, the victim testified that he did not know the answer to a question, only to answer a similar question later. The victim also testified that the incident made him feel "mad" and that his mother told him that he should not tell anyone about it. Johnston testified that she told the victim that he should not tell anyone about it.

In her closing argument, the prosecutor contended that it was difficult for the victim to testify about sexual abuse. The prosecutor also contended that the victim's mother should have, but did not, protect him from that abuse. We have reviewed the prosecutor's statements in context and conclude that they did not encourage the jury to decide the case on the basis of sympathy. Rather, the prosecutor argued this evidence as it related to the victim's credibility. Caldwell has not shown that this alleged misconduct constituted plain error.

Third, Caldwell contends that the prosecutor improperly asked a witness to comment on the credibility of another witness. We conclude that one of the prosecutor's lines of questioning was improper, but the error did not affect Caldwell's substantial rights.

The prosecutor may not ask a witness to provide an opinion on the credibility of another witness. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). In this case, the prosecutor did not ask Detective Smigielski to opine about Caldwell's truthfulness. The prosecutor asked Detective Smigielski why he continued to interrogate Caldwell after Caldwell denied that the incident occurred. Detective Smigielski testified that he paid attention to body language, and Caldwell did not look him in the eye, so he continued the interview because he wanted to "kind of step it up a little bit[.]" We conclude that Caldwell has not shown plain error in the prosecutor's question.

However, the prosecutor did ask Detective Smigielski to divide Johnston's interviews into segments, and then asked during which segment Detective Smigielski believed that Johnston was being truthful. Detective Smigielski opined that Johnston was not truthful during the first portion of the interview. The prosecutor should not have asked Detective Smigielski to comment on Johnston's credibility. However, since Johnston testified that she was not initially truthful in her interview with Detective Smigielski, we conclude that this error did not affect Caldwell's substantial rights. It is not reasonably likely that Detective Smigielski's opinion of Johnston's truthfulness affected the outcome of Caldwell's trial.

V. INEFFECTIVE ASSISTANCE OF COUNSEL

Caldwell contends that defense counsel did not effectively assist him at trial because counsel failed to call an expert witness to testify about the reliability of child witnesses. We conclude that Caldwell has not shown that counsel acted unreasonably.

A criminal defendant is constitutionally entitled to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. Generally, a defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). But, a defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his counsel was ineffective. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Caldwell has not done so in this case. Therefore, our review is limited to mistakes apparent from the record. See *Id*.

To prove that defense counsel provided ineffective assistance, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *Pickens*, 446 Mich at 312. The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defense counsel's decisions to call and investigate witnesses are matters of trial strategy. *Id*.

In this case, the record indicates that defense counsel focused on impeaching the existing witnesses, including Rospierski. Counsel focused on the inconsistencies between the witnesses' testimonies and whether it was probable that Caldwell would have sexually assaulted the victim with the bedroom door open and a clear view into the bedroom from a window that faced onto the back porch. We are not convinced that counsel's strategic decision was unreasonable.

Further, without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial. See *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). There are no facts in the record to support Caldwell's contention that an expert on child witnesses would have testified in his favor. We conclude that Caldwell has not demonstrated that counsel rendered ineffective assistance.

To the extent that Caldwell raises additional issues of ineffective assistance of counsel, we conclude that he has abandoned them by failing to support them. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Defense counsel is not ineffective simply because counsel chooses not to make an objection, even if the objection has merit. See *Horn*, 279 Mich App at 40. Caldwell's bald assertion that defense counsel should have made some objections does not adequately address the reasonableness of those decisions. Further, other than a single sentence referring us to the rest of his brief, Caldwell does not explain how counsel's decisions were prejudicial. We conclude that Caldwell has abandoned the remainder of his assertions of ineffective assistance by failing to address their merits.

Affirmed.

/s/ Peter D. O'Connell
/s/ David H. Sawyer
/s/ Jane E. Markey